

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS DEPARTMENT OF REVENUE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ENVIRODYNE INDUSTRIES, INC., *et al.* )<br>)<br>Defendants. ) | Civil Action No.: 06 C 4272<br><br>Suzanne B. Conlon, Judge |

## **MEMORANDUM OPINION AND ORDER**

The Illinois Department of Revenue (the "Department") appeals the bankruptcy court's memorandum opinion and order granting an objection by Envirodyne Industries, Inc. ("Envirodyne") and several of its subsidiaries to the Department's proof of claim.[1] In the bankruptcy court and on appeal, the Department contends that Envirodyne cannot carry back its net operating losses from 1988 and 1989 to offset taxable income from prior tax years, because it already carried those losses forward to offset that income incurred in 1991. According to the Department, Envirodyne made an implicit election under Section 207(a) of the Illinois Income Tax Act to irrevocably forego its right to carry back losses by filing a return that carried losses forward. The Department alternatively argues that Envirodyne's net operating losses were eliminated as a result of filing a bankruptcy petition in 1993, and the carrybacks are barred by the common law duty of consistency. The bankruptcy court rejected the Department's arguments, sustained Envirodyne's objection to the proof of claim, and held no additional taxes were due. For the reasons set forth below, the bankruptcy court's ruling is affirmed.

---

[1] The subsidiary debtors in the bankruptcy proceeding are Sandusky Plastics, Inc., Sandusky Plastics of Delaware, Inc., Viskase Corporation, Viskase Holding Corporation, Viskase Sales Corporation, Clear Shield National, Inc., and Envirodyne Finance Company (collectively, "the debtor subsidiaries").

## BACKGROUND

The parties stipulated to the following facts: Envirodyne is a holding company that acquires and disposes of primarily technology-related companies. Several of Envirodyne's subsidiaries made food packaging materials. Several others made steel, including the Wisconsin Steel Company. The food packaging subsidiaries turned a profit; the Wisconsin Steel group of subsidiaries generated large losses. For the tax years at issue, 1989 and 1990, Envirodyne filed consolidated Illinois income tax returns. Consolidated returns allowed Envirodyne to offset income from the food packaging subsidiaries with losses from the Wisconsin Steel subsidiaries. Envirodyne was allowed to offset income from companies located outside Illinois because it characterized all the subsidiaries as part of the same "unitary business group." A unitary business group is "a group of persons related through common ownership whose business activities are integrated with, dependant upon and contribute to each other." 35 ILCS 5/1501(a)(27). If the Wisconsin Steel subsidiaries were not part of the unitary business group, Envirodyne could not use their losses, *i.e.*, offset taxable income, in its Illinois tax return. § 5/502(e); 86 Ill. Admin. Code § 100.5200. The inclusion of the Wisconsin Steel subsidiaries in the unitary business group was significant because from 1979 to 1981 they generated losses in excess of $130 million.

In 1993, the Department audited Envirodyne's 1988 and 1989 income tax returns. The Department determined the Wisconsin Steel subsidiaries should not have been included in the same unitary business group as the food packaging subsidiaries. Envirodyne was therefore disallowed use of the steel subsidiaries' losses. Accordingly, Envirodyne could not carry back or carry forward those losses to offset past and future income. At the time, Section 207(a) of the Illinois Income Tax Act allowed net operating losses to be carried back for three years or carried forward for 15 years

from the year of the tax loss. § 5/207(a)(1) (net operating loss deductions are allowed in this manner to equalize tax liability for cyclical sales). The net effect of the Department's audit was to increase Envirodyne's Illinois tax liability from zero dollars for 1988 and 1989 to $997,983, plus $627,240 in interest and penalties.

In January 1993, Envirodyne and the debtor subsidiaries filed for bankruptcy protection. The bankruptcy court confirmed their reorganization plan later that year. In 1997, the Department filed a claim for the additional taxes Envirodyne owed based on the audit. Envirodyne objected, asserting the Wisconsin Steel subsidiaries and the related net operating losses were properly included in its unitary business group. Envirodyne argued in the alternative that it had sufficient net operating losses from non-Wisconsin Steel subsidiaries to carry back to 1989 and 1990 and offset the $1.5 million liability.

The bankruptcy court agreed with Envirodyne. It held the Wisconsin Steel subsidiaries were part of Envirodyne's unitary business group; therefore, Envirodyne could use carryforward losses to offset its income. Memorandum Opinion, Bankr. Dkt. No. 2719 (Sept. 4, 2001). The court did not address Envirodyne's alternate argument. The Department's appeal to this court was unsuccessful. *See Illinois Dep't of Revenue v. Envirodyne Indus., Inc.*, 01 C 7861, 2002 WL 230903, at *7 (N.D. Ill. Feb. 15, 2002) (Conlon, J.). However, the Seventh Circuit reversed, finding there was no genuine integration of the food packaging and steel subsidiaries, thus precluding the formation of a true unitary business group. *In re Envirodyne Indus., Inc.*, 354 F.3d 646, 649 (7th Cir. 2004). The case was remanded to this court, which in turn remanded the case back to the bankruptcy court, for a determination whether Envirodyne had non-Wisconsin Steel carryback losses sufficient to offset its tax liability.

3

The parties extensively briefed the carryback issue before the bankruptcy court. The issue turned on whether Envirodyne waived its right to carry back its non-Wisconsin Steel net operating losses by previously carrying those losses forward. Envirodyne asserted it had not waived its carrybacks and had sufficient net operating losses in the years after 1989 and 1990 to completely offset its income. Memo. at 3, Bankr. Dkt. No. 2735 (May 28, 2004). The Department argued Envirodyne was precluded from using available carryback losses because it filed a tax return that carried those losses forward. Memo. at 5, Bankr. Dkt. No. 2737 (June 15, 2004). According to the Department, its policy during the relevant time was to view an election to carry losses forward as an election to irrevocably waive the right to carry losses back. *Id.* at 8-10. The Department alternatively argued Envirodyne could not use its carryback losses because it changed position (first carrying losses forward and now attempting to carry them back) to its advantage. *Id.* at 14-16. The Department contended the common law duty of consistency estopped Envirodyne from flip-flopping to reduce its tax burden. *Id.* The Department further argued the bankruptcy court did not have jurisdiction to address the carryback issue. *Id.* at 16-19.

The bankruptcy court ruled against the Department. The court first determined it had jurisdiction because Envirodyne was not required to file an amended return before the court could address the claim. Memorandum Opinion at 9, Bankr. Dkt. No. 2758 (Nov. 16, 2005). The court specifically found Envirodyne was not seeking a refund and its objection to the claim was not speculative. *Id.*

Turning to the merits, the court reviewed Section 207(a) of the Illinois Income Tax Act and the related federal statutes and regulations. *Id.* at 9-13. The court also reviewed a corresponding Illinois regulation and the Department's private letter rulings. *Id.* The court found Section 207(a)

4

incorporated the federal regulations requiring a taxpayer to affirmatively waive his right to forego a carryback deduction. *Id.* at 12-13. The regulations require "a statement attached to the return (or amended return) for the taxable year" to waive carryback losses. *Id.* at 13 (citing 26 C.F.R. § 310.9100-12T(d)). The court found the Illinois regulation did not specify what acts constituted an election. *Id.* at 11. Further, the letter rulings and the Illinois regulation were not consistent with one other. *Id.* at 13. The court held the more explicit federal regulation governed; thus, Envirodyne was required to affirmatively elect to forego its carrybacks. *Id.* According to the court, Envirodyne took no affirmative action because the Department's own regulations were "unable to tell the Debtors how such an election should be made." *Id.* The court also found persuasive Envirodyne's inability to carry back losses at the time it filed its return, because it did not have any taxable income to offset. *Id.* The taxable income was then offset by losses from the Wisconsin Steel subsidiaries. *Id.* The court determined Envirodyne's tax liability arose after the Seventh Circuit's decision in 2004. *Id.* Envirodyne could not have made an affirmative election simply by using carryforwards if there was no option to do otherwise. *Id.* at 14.

The bankruptcy court further held the duty of consistency did not bar the carrybacks because Envirodyne always took a consistent position with the Department. *Id.* The Department would suffer no harm from Envirodyne's actions. *Id.* The court rejected the argument that Envirodyne's net operating losses were reduced to zero when it filed bankruptcy. *Id.* at 15. "The more logical interpretation of [Section 346(j)(3) of the Bankruptcy Code] is that it reduces only those net operating losses that would otherwise be eligible to be carried forward out of bankruptcy and used to reduce tax liability in profitable years to come." *Id.*; *see also* 11 U.S.C. § 346(j)(3). Envirodyne's shifting of "pre-[bankruptcy] petition losses from one pre-petition year to another" was allowed

5

under the statute. *Id.* The bankruptcy court concluded that Envirodyne's carrybacks were proper and it owed no additional tax. *Id.* at 16.

## ANALYSIS

The Department raises three issues on appeal: whether the bankruptcy court erred in holding that (1) Envirodyne could carry back net operating losses it had already carried forward; (2) the net operating losses were not already dissipated pursuant to Section 346(j)(3) of the Bankruptcy Act; and (3) the duty of consistency does not bar the carrybacks.

### I. Standards of Review

The court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." FED. R. BANKR. P. 8013. The court reviews the bankruptcy court's conclusions of law *de novo*. *Matter of Newman*, 903 F.2d 1150, 1152 (7th Cir. 1990). Factual findings are reviewed for clear error. *Id.* The parties stipulated to the facts; the issues before the court are legal. It is Envirodyne's burden to prove it is entitled to carryback deductions arising from its net operating losses. *See Bella v. Dep't of Revenue*, 421 N.E.2d 236, 238 (Ill. App. Ct. 1981); *see also In re Envirodyne*, 354 F.3d at 649 (taxpayers burden before district court the same as before an Illinois state court).

### II. Election to Forego Net Operating Loss Carrybacks

The Department argues Envirodyne waived its right to carry back net operating by electing to carry those losses forward. The Department relies on an Illinois regulation and its own policy during the time to support its claim. According to the Department, its policy treated an overt act of a taxpayer, such as filing a return carrying losses forward, as an affirmative election to forego carryback losses. Envirodyne counters that the Illinois Income Tax Act requires more: a taxpayer

must make an affirmative election to forego carrybacks by attaching a written statement to the tax return indicating his intent. The bankruptcy court framed the issue as "whether, under Illinois law, the act of carrying the net losses forward, by itself, constituted an irrevocable election by the Debtors or whether the Debtors would have had to file a formal statement to make the election." Memorandum Opinion at 9-10, Bankr. Dkt. No. 2758 (Nov. 16, 2005).

The dispute is one of statutory construction. The first rule of statutory construction is that where the language of a statute is clear, the court must apply its plain meaning as written. *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). "When the words of a statute are unambiguous, then, this first cannon is also the last: 'judicial inquiry is complete.'" *Id.* at 254 (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)). On rare occasions, secondary cannons are available to modify the cardinal rule. *Udell v. Standard Carpetland USA*, 18 F.3d 403, 411 (7th Cir. 1994) (Flaum, J., concurring).

The version of Section 207(a) of the Illinois Income Tax Act in effect at the time Envirodyne made its net operating loss election states:

> If after applying all of the modifications provided for . . . the taxpayer's net income results in a loss, such loss *shall be allowed as a carryover or carryback deduction **in the manner allowed under Section 172 of the Internal Revenue Code**.*

35 ILL. COMP. STAT. 5/207(a) (1987) (emphasis added). The language of Section 207(a) is clear. It gives taxpayers the right to carry forward or carry back net operating loss deductions. The statute does not specify the manner in which deductions are allowed. Instead, it directs the taxpayer to Section 172 of the Internal Revenue Code.

7

Section 172 provides in relevant part:

> (b) Net operating loss carrybacks and carryovers.--
> (1) Years to which loss may be carried.--
> (A) General rule.–Except as otherwise provided in this paragraph, a net operating loss for any taxable year–
> (i) shall be a net operating loss carryback to each of the 3 taxable years preceding the taxable year of such loss, and
> (ii) shall be the net operating loss carryover to each of the 15 taxable years following the taxable year of the loss.
>
> * * *
>
> (3) Election to waive carryback.–Any taxpayer entitled to a carryback period under paragraph (1) *may elect to relinquish the entire carryback period with respect to a net operating loss for any taxable year. Such election shall be made in such manner as may be prescribed by the Secretary*, and shall be made by the due date (including extensions of time) for filing the taxpayer's return for the taxable year of the net operating loss for which the election is to be in effect. Such election, once made for any taxable year, shall be irrevocable for such taxable year.

26 U.S.C. § 172(b) (1991) (emphasis added). Section 172 is also clear. It tells the taxpayer how net operating losses can be used. The statute sets forth the years a taxpayer may carry losses back or forward. It also gives a taxpayer the right to waive the entire carryback deduction. It explains an election to forego the deduction is irrevocable. The statute makes clear the taxpayer must elect to waive his carryback losses. The statute does not specify how an election is made, however. The taxpayer is directed to the Secretary's regulations for further instruction.

What happens next is the crux of the parties' dispute. Envirodyne contends Section 172 directs the taxpayer to a controlling Treasury Department regulation ("the federal regulation"). The regulation provides:

8

> Manner of making election. *Unless otherwise provided in the return or in a form accompanying a return for the taxable year, the election ... shall be made by a statement attached to the return* (or amended return) for the taxable year. *The statement required when making an election pursuant to this section shall indicate the section under which the election is being made and shall set forth information to identify the election, the period for which it applies, and the taxpayer's basis or entitlement for making the election.*

26 C.F.R. § 310.9100-12T(d) (emphasis added). The federal regulation provides an election to forego must be made by a statement attached to the return. A separate statement is necessary because the regulation requires the taxpayer to identify the election made, the time period to which it applies, the basis for making the election, and the Internal Revenue Code section authorizing the election. The regulation's language is unambiguous and mandatory: to make an election to irrevocably forego a carryback, the taxpayer must attach a statement to the return with the relevant information. *See Young v. Comm'r of Internal Revenue*, 783 F.2d 1201, 1205 (5th Cir. 1986) (the election requirement is the "essence of the statute" and it must be strictly followed or no election occurs); *Santi v. Comm'r of Internal Revenue*, 59 T.C.M. (CCH) 110, *dec. entered*, 1990-137 (Mar. 14, 1990) (same); *see also Branum v. Comm'r of Internal Revenue*, 17 F.3d 805, 811 (5th Cir. 1994) (law requires election to be unequivocal).

The Department urges the court to disregard the federal regulation and apply an Illinois regulation in its place. Enacted in 1987, the Illinois regulation provides:

> (b) Election to forego carryback period. Any taxpayer entitled to a net loss carryback may elect to relinquish the entire carryback period with respect to a net loss for any taxable year ending on or after December 31, 1986. Such election, once made for any taxable year, shall be irrevocable for that taxable year.

86 ILL. ADMIN. CODE § 100.2563(b) (1987). The Illinois regulation does not explain how a taxpayer should make an election. It only states a taxpayer has the right to relinquish his carryback loss and

9

must make an election to do so. It provides no other information about the procedure a taxpayer must follow to forego a carryback than Section 172.

Contrary to the Department's argument, the Illinois regulation does not control how a taxpayer makes an election because it is silent on the matter. The federal regulation, on the other hand, explicitly sets forth what a taxpayer must do to elect to forego a carryback. A regulation cannot govern a situation if it does not provide direction to the taxpayer. Moreover, the federal regulation is referenced in Section 172, which is specifically incorporated into Section 207(a) of the Illinois Income Tax Act. The progression of references suggests the Illinois legislature intended to employ the federal regulation to govern elections to forego carrybacks. The federal regulation requires a taxpayer to make an affirmative election by attaching a statement to the return. Envirodyne did not do what the federal regulation requires. Therefore, Envirodyne did not elect to forego its right to carry back net operating losses.

The Department contends the Illinois regulation controls despite its plain language. The Department argues its policy during the time was to treat overt acts by the taxpayer indicating he wished to forego carrybacks as a valid election. The Department relies on an amended version of the Illinois regulation, enacted in 1996, that provides an election "shall be made on the taxpayer's return." 86 ILL. ADMIN. CODE § 100.2330(b)(1) (1996). It also relies on its own letter rulings, which the Department says allow a taxpayer to make an implicit election by filing a return. The Department's arguments are without merit. The plain language of the statutes and regulations is unambiguous. The court is not permitted to delve into the Department's policies or the intentions of a taxpayer in the face of clear language. *See Connecticut Nat'l Bank*, 503 U.S. at 254. The court can only look beyond the plain language if there is ambiguity. *Id.* Here, there is none.

Even if the court were to look beyond the plain language, the result would not change. First, two secondary cannons of statutory construction foreclose the Department's argument. The bankruptcy court employed a cannon that provides that when both a specific and a general provision govern a situation, the specific one controls. Memorandum Opinion at 13, Bankr. Dkt. No. 2758 (Nov. 16, 2005); *see also In re Gulevsky*, 362 F.3d 961, 963 (7th Cir. 2004). The Illinois regulation is silent on how a taxpayer elects to waive a carryover; the federal regulation gives detailed instructions. In this circumstance, the federal regulation controls. It is immaterial that the regulations compared were issued by different agencies. Both address elections to forego carrybacks, one simply does it more explicitly. It is disingenuous for the Department to argue the cannon is inapplicable while arguing the Illinois regulation specifically governs a taxpayer's actions.

Another cannon provides that courts must "construe statutes in the context of the entire statutory scheme and avoid rendering statutory provisions ambiguous, extraneous, or redundant." *Cole v. U.S. Capital*, 389 F.3d 719, 725 (7th Cir. 2004); *see also Silverman v. Eastrich Multiple Investor Fund, Ltd.*, 51 F.3d 28, 31 (3d Cir. 1995) (applying the cannon to regulatory interpretations). The Department's position violates this cannon because it renders Section 172's reference to its regulations superfluous. The Illinois regulation contains no detail regarding how to elect to forego a carryback; it provides essentially the same information as Section 172. Accepting the Illinois statute as controlling obviates the need for Section 172's reference to a regulation regarding the manner in which an election is made. However, Section 172 is specifically incorporated in Section 207(a); its provisions cannot be ignored. The Illinois regulation explains when a carryback waiver is allowed under Illinois law, but leaves the specifics of making the election to the federal regulation.

11

Second, the Department's February 1988 private letter ruling, the only other item interpreting the statutes and regulations during the relevant time, undercuts the Department's position. In the letter ruling, a taxpayer asks the Department about "the manner in which a taxpayer may elect to forego the carryback of a 1987 net operating loss." Appellant's Br. at App. 2. The Department responds that the taxpayer "would make the election by carrying forward the loss on the 1988 return and *attaching written certification* signed by a person authorized to speak for the corporation that the loss has not previously been carried back." *Id.* (emphasis added). The Department's own ruling requires more than an implicit election to forego a carryback. It is of no avail that the referenced certification is not in the same form as required by the federal regulation. The import of the ruling is that something more than an implicit election is necessary to forego carryback losses. The other letter rulings cited by the Department were issued after the relevant time period and are inconsistent with each other. *Compare* Letter Ruling, Appellee's Br. at App. 1 (stating the "Department has no procedure for the election [of a carryback] at this time") *with* Letter Ruling, Appellant's Br. at App. 4 (telling taxpayer he "could implicitly make the election to forego the carryback period by filing a return carrying the loss forward"). These letter rulings do not strengthen the Department's position.

The Department's other arguments are equally unpersuasive. The Department argues the court should give deference to its interpretation of the Illinois regulation. While courts generally defer to agencies' interpretations of their own regulations, deference is not warranted in this case. *See Batanic v. Immigration and Naturalization Serv.*, 12 F.3d 662, 665-66 (7th Cir. 1993) (exception to rule of deference to an agency when the agency's interpretation of its regulation is unreasonable). The Department's interpretation is not compelling because it conflicts with the regulation's plain language and the statutory scheme initiated in Section 207(a). Moreover, no deference is given to

12

the Department's interpretation of an Illinois statute or a federal agency's regulation. Section 207(a) directs the taxpayer to follow the federal statute, and in turn the federal regulation. The Department's interpretation of its own non-controlling regulation is irrelevant.

The Department provides no authority for its argument that an Illinois statute must specifically incorporate a federal regulation. The Department contends this is the case based on other Illinois statutes. The Department asks the court to speculate as to the legislature's intentions even though the statute's plain language is clear. The court will not speculate based on the language of unrelated statutes. If the legislature did not intend to direct taxpayers to the federal regulation, it could have referenced the Illinois regulation or amended Section 207(a) to indicate how an election is made. At the time in question, the legislature had done neither.

Finally, the Department argues the bankruptcy court should not have relied on Envirodyne's inability to carry back losses as a basis for finding there was no affirmative election. The Department misconstrues the bankruptcy court's analysis. The bankruptcy court did not find inability alone dictated there was no election. It found the plain language of Section 172 requires an affirmative election to forego a carryback. Memorandum Opinion at 13-14, Bankr. Dkt. No. 2758 (Nov. 16, 2005). Envirodyne's inability to carry losses back made it impossible to comply with the statute's plain meaning. The bankruptcy court's interpretation of the statue is correct.

### III. Section 346(j)(3) of the Bankruptcy Code

The Department argues Envirodyne cannot meet its burden to show it has unused net operating losses sufficient to offset its 1989 and 1990 taxable income. According to the Department, Envirodyne's 1993 bankruptcy reduced its net operating losses to zero pursuant to Section 346(j)(3) of the Bankruptcy Code. Envirodyne argues the bankruptcy court was correct in holding Section

13

346(j)(3) does not preclude a taxpayer from carrying back net operating losses incurred pre-petition to offset pre-petition earnings.

Section 346(j)(3) provides in pertinent part:

> [F]or the purpose of any State or local law imposing a tax on or measured by income, any net operating loss of an individual or corporate debtor, including a net operating loss carryover to such debtor, shall be reduced by the amount of indebtedness forgiven or discharged in a case under this title, except that such forgiveness or discharge resulted in a disallowance under paragraph (2) of this subsection.

11 U.S.C. § 346(j)(3) (1993).[2] The statute unambiguously precludes a taxpayer from using pre-petition net operating losses to offset post-petition taxable income. It is silent on the use of losses to offset pre-petition income. The court agrees with the bankruptcy court that the logical interpretation of the statute is that it "reduces only those net operating losses that would otherwise be eligible to be carried forward out of bankruptcy." Memorandum Opinion at 15, Bankr. Dkt. No. 2758 (Nov. 16, 2005). On its face, Section 346(j)(3) does not preclude Envirodyne from reducing pre-petition income with pre-petition losses.

The court's interpretation of the statute comports with its purpose: to prohibit a debtor from realizing the double benefit of discharging debt through bankruptcy and carrying a net operating loss over to a later taxable year. *See* 15 Collier on Bankruptcy § 12.03. The Department cites no authority calling the statute's purpose or its plain language into question. Envirodyne cites a

---

[2]Section 346 was amended on April 20, 2005 to exclude subsection (j). *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 719(a)(1). The parties do not raise this in their briefs and do not dispute that the prior version of the statute controls. The court applies the version of the statute in effect at the time Envirodyne filed its bankruptcy petition. *See Burton v. Illinois Student Assistance Comm'n*, No. 03 C 6415, 2004 WL 2515826, at *4 (N.D. Ill. Nov. 5, 2004) (Grady, J.).

14

similarly-worded Internal Revenue Code regulation that allows net operating losses to be carried back, provided they are used before a tax attribution reduction. 26 C.F.R. § 1.108-7(a)(1)(i) and (b); *see also United States v. Farely*, 202 F.3d 198, 205 (3d Cir. 2000). Although not authoritative, the regulation provides some guidance. It demonstrates that net operating losses may be used prior to the event eliminating the losses, *i.e.*, attribution reduction or, in this case, the filing of a petition. The court's own research uncovers nothing to preclude Envirodyne from using pre-petition carryback losses to offset pre-petition income. Envirodyne has met its burden and is entitled to use its carryback deductions as it proposes.

## IV. Duty of Consistency

The Department argues the common law duty of consistency bars Envirodyne's use of its carryback losses. According to the Department, Envirodyne impermissibly changed its position by carrying losses forward from 1989 and 1990 and now trying to carry losses back. The Department contends it will be harmed by the inconsistency because Envirodyne will owe uncollectible "restricted interest." Envirodyne responds that it is not acting inconsistently because its tax liability arose, and therefore its ability to use carrybacks, only after the Seventh Circuit invalidated the Wisconsin Steel subsidiaries' net operating losses.

The duty of consistency is an equitable doctrine courts apply "in appropriate cases to prevent unfair tax gamesmanship." *Baldwin v. Comm'r of Internal Revenue*, 83 T.C.M. (CCH) 1915, *dec. entered*, 2002-162 (June 26, 2002). It is based on the theory that the taxpayer owes a "duty to be consistent in the tax treatment of items and will not be permitted to benefit from the taxpayer's own prior error or omission." *Id.* (quoting *Cluck v. Comm'r of Internal Revenue*, 105 T.C. 324, 331 (1995)). The duty applies when there is: (1) a representation by the taxpayer; (2) on which the

15

Commission relies; and (3) an attempt by the taxpayer after the statute of limitations runs to change the previous representation or to recharacterize the situation in a way that harms the Commission. *Kielmar v. Comm'r of Internal Revenue*, 884 F.2d 959, 965 (7th Cir. 1989).

The duty of consistency does not bar Envirodyne's intended use of its carryback losses. The purpose of the duty is to preclude taxpayers from gaming the system, flip-flopping positions after the statute of limitations expires to gain an advantage. Envirodyne is not attempting to do that here. It made no error and has not taken an inconsistent position with the Department. Envirodyne previously used its net operating losses in the only way possible at the time: it carried the losses forward because it had no taxable income. Over a decade later, the Seventh Circuit invalidated its unitary business group, which created a $1.5 million tax liability. Envirodyne seeks to apply carryback losses to offset this "new" liability for the first time. Envirodyne's actions have been consistent with its available options.

The Department cites cases setting forth the standards for the duty of consistency but does not explain how the cases apply to the current situation. The cases do not address facts where an intervening court decision over a decade later precipitated the taxpayer's "inconsistent" actions. Decisions finding a taxpayer violated the duty of consistently addressed markedly different facts than are before this court. *See* Federal Tax Coordinator ¶ T-5452 (2006) (collecting cases, many involving fraud or misrepresentations by the taxpayer). It would be unfair to hold Envirodyne liable for acting in the only way possible given the circumstances. The duty of consistency, an equitable doctrine, does not apply to Envirodyne's actions.

## CONCLUSION

For the reasons set forth above, the bankruptcy court's memorandum opinion and order is affirmed.

ENTER:

Suzanne B. Conlon
United States District Judge

October 31, 2006